Good morning, Your Honors, I'm Jane Ellison on behalf of Frederick T.K. I'll do my best to watch my own clock and try to reserve three minutes for a little. I'd like to start this morning with the standard of review. We've identified three bases for the court to conduct a noble review. The improper legal framework, the failure to adjudicate all the merits, and the unreasonable factual determinations. I think as far as the unreasonable facts go, those fall in better with the merits of the case. So if I could, I'd like to cover that and focus right now on the first two arguments. The backgrounds that the Supreme Court has set out consist in a straightforward analytical approach to deal with the defendant's right to justice and defiance. And that is, you balance the defendant's interest in the admission of the evidence against the state's interest in exclusion, and then you assume as the final standard. Now here Mr. Thiecke presented the California Court of Appeal by a major sale to federal due process claim of his right to present a defense. And that's not the claim that the California Court of Appeal decided. It never acknowledged Mr. Thiecke's right to present a defense. It didn't acknowledge any way that a claim refers to process. He doesn't, the law doesn't require that they specifically address the argument, correct? Well, I think that refers, Your Honor, to, I mean, it does actually address the claim, and I think the argument that the counsel has made is that when there are overlapping federal and state claims, and the standards are overlapping, and if the state court decides they should go to the state law, and there's harmony in the two legal standards, the federal state standard, then you sort of substitute that the federal claim wasn't replicated. But that's not what happened here. Mr. Thiecke didn't raise a state court appeal, and because he only raised a federal due process claim, and then when the state court's analysis was essentially limited exclusively to California evidence, it didn't articulate Mr. Thiecke's interest in admitting the evidence, it balanced that against the state's claimed interest in exclusion, and then it arrived at a decision that implied the harmony in the way that they went from also filed, it never used the Chapman standard. And so, really all it was was a state law evidence decision, and it means two things. If you credit the idea that the state court was applying to and purporting to decide a federal constitutional issue, and it applied to our legal framework, it didn't incite any federal punting, it didn't incite any of the Supreme Court's cases, and of course, Your Honor, that's not dispositive in and of itself, but it's indicative of the decision that Mr. Thiecke made that the state court was doing. Alternatively, I think the record also supports the finding that the state court, for whatever reason, kind of lost its way, and just decided as a matter of state evidence alone, either way, this court does not have a federal constitutional decision under EDPA to defer to, and that means that Your Honor should continue to review the case and vote on it. Well, but that doesn't mean that the Supreme Court can't stall a vote further to say that we shouldn't even comply with it. I don't think so, Your Honor. And I don't support that the state court denies a claim, and I wish I could come up with a good argument to support it. I don't think so, Your Honor. Because the state court doesn't, you know, bring it down and talk about arguing Well, but that is in the, that is in the failure to obstruct any one of the cases, and that's the only case that the state could have cited an imposition of arbitration. But when a state, when a state court does purport to decide the federal constitutional issue, it has a duty under EDPA to apply the proper legal framework. It has to support the public decision in France, and that's clearly, that's well established, and it's certain to the court precedent, it derives from, you know, what I'm talking about in the Supreme Court case, but it's there, Your Honors. If I could turn to the first point, the merits, that is the importance of the evidence to Mr. Dickey's defense. I recommend that you hear the state articulate a reason why this evidence, particularly Dr. Foster's, is not important to the defense, clearly because it's the very foundation of the defense, and the defense, in a nutshell, is a person neglected as a child, it's the brain damage, it's the condemnation of these Without the abuse and neglect, the entire defense, it crumbles in a house of cards. So, if my colleague is able to articulate a basis to say that this is not important to Mr. Dickey's defense, I'll be interested to hear what it is. I need to hear that. The second problem, at least, there was evidence about, in the record, about the stress, some evidence, at least it wasn't entirely precluded from raising that type of evidence. Indeed, Dr. Foster testified that Dickey grew up in an environment of extreme stress. There's another attribution to the record where it says that Carr was tied to his mother's deprivation and his mother's frequent taking from him and not giving to him. This was an opportunity for him to give to her, and she said felt afraid. I mean, there was evidence that came out, although it was restricted in some sense, but the record is not completely devoid of that type of evidence. Well, in sanity phase, he was able to testify that he had a long history of having been provoked severely by his mother and others for a long time, although responding in that way. So, there was testimony about it from his background. Those are the only three, but those are your arguments. But what was lacking from that, your word, is the actual underlying facts. The jury had no foundation to understand what it meant that Mrs. Green deprived him. What did she deprive him of? They had no idea. They had no factual basis to understand what that meant. An environment of extreme stress. What information did the jury have to evaluate, whether that was true or not, or what that even meant? Well, that would have been hearsay, correct? The psychiatrist testifying to that, that would have been, to accept the truth of that, would have been hearsay, correct? Dr. Foster had an absolute right to testify about these case-specific, out-of-court statements, because they were considered non-hearsay at the time. Now, Sanchez has definitively told us that that was right, and there are only two bases under which the court could have excluded them. The hearsay comes in as non-hearsay, unless it either does relate to an external opinion, which is absolutely not the truth here, or you conduct a 5-352 analysis of it, which is usually handled up to 403 in federal court, to say that either the provative value did not weigh the credits, or it was unreliable, or something like that. There are no findings in either of the trial court or the California court of appeals to that effect. The trial court just said it's hearsay, it's accurate, that that was absolutely improper. We know that Sanchez, under the Coleman Law, the case is now absolved. That is not true now, of course. After Sanchez, that regime is over. The California Supreme Court has upended that, and it's done that. At the time of Mr. TK's trial, he had the absolute right to introduce those out-of-court statements as non-hearsay basis for the annex of his opinion. We announce this, of course, on the second part of the test, which is the state's claim to interest and exclusion. The touchstone here, of course, one of the main touchstones is barbershops. It comes directly from the Supreme Court. No one has done it as Holmes v. South Carolina, so I'll sit very well. And I barely appointed a footnote, I won't be making this up, granted I do like the other sides of the aisle. The California court of appeal, the trial court's rulings were inconsistent. If the California court of appeal had conducted a proper constitutional analysis, it would have recognized the constitutional dimension of that finding, which is a different way of saying it was a barber's query. We've also found that the trial court wrongly excluded the testimony of Barber Schmidt about the abandonment of the trailer when he was four years old. Is it clear in his actual finding of the California court of appeal that the trial court's rulings were arbitrary if you recognize the constitutional dimension of Mr. TK's claim, which the California court of appeal did not? It's a finding of arbitrariness which has great import on a Supreme Court case. What kind of constitutional analysis are you saying we should apply? The federal constitutional right to present a defense as set forth in Washington, Crony, Chambers, and that entire line of cases. Mr. Holmes, the first one, was decided after our case because I'm technically under arrest. But, of course, all this evidence that he was mentally stable. Absolutely. All the time, I mean, that's very meticulous. Absolutely wrong. It goes to explain the doctor's opinion that to a reasonable degree of mental certainty, he suffered brain damage. He could have undertaken his actions in some sort of unconscious fight or flight state court. That was the doctor's expert opinion about Mr. TK's mental state. And the entire foundation of it was that he was abused horrendously as a child. And all of that factual information, which should have come in through the doctor, was excluded. So the jury had absolutely no basis to understand what he was talking about. Why is he saying Mr. TK had a bad childhood? The lawyer was making these arguments, but there was absolutely no evidence or foundation from the trial record to support it. But that information should have come in for its truth through the doctor. No. The Coleman regime, the California State Constitution, Coleman was. Experts get to testify about case-specific, out-of-state, out-of-court statements as a non-hearsay. Because they're not offered for the truth. They're only offered as basis for the expert's opinion. Most courts, they're offered for the truth. And the opinion has no meaning. That's what the California Supreme Court held in Sanchez. That's why Sanchez discarded Coleman. And he said, just be honest. Of course it's a ridiculous regime. We got to get rid of this. It's not the way we want our court system to operate. So that's the rule now. But it wasn't the rule at the time of Mr. TK's trial. So the trial counsel said, I'm going to bring in Foster. I'm going to get these facts in through Foster. The rule of Coleman was that he was emitting an obstruction that tells the jury, don't use it for the truth. Just use it as a basis for the expert's opinion. And the jury was on with. To move to that issue, the jury asked the jury a question about that. They were trying to figure out, how do we not use it? How do we not use this for the truth? And of course, as Sanchez was talking, it's really hard to do. So that's why that case was over. I can close on a harmless disparate case now for a sort of crystalline time. And so for those three isolated and I think opaque statements that don't really get to the heart of being thrown against the wall, being abandoned when you're four years old in a trailer, being told you're fat worthless and a slob, being neglected, being an explosion to your mother's sexual discretion for your entire life, she's going on meth and being just leaving it alone. This is the glory, ugly facts of his youth that were excluded. Not that kind of direct. So if you look at Chambers, the Supreme Court reversed there. That guy's third party confession was actually in evidence. The constitutional violation was he exclusively corroborating it out of testimony to support the confession. But he's the conservative about the confession. Granted, he was allowed to challenge his confession. He was allowed to poke holes and show inconsistency. The constitutional violation there was that he wasn't allowed to go further and expose the coercive circumstances of his interrogation. Washington, the defendant was able to testify that he was not the shooter. The constitutional violation was that he was allowed to call his co-defendant the corroborator. And this, of course, is used in the Petrus. The defendant was able to, she was able to introduce evidence of her domestic abuse and abuse of her husband, who was seen in that case. The constitutional violation was that she was allowed to introduce his diary and bedding to him. So all these cases are, the Supreme Court and this court have found constitutional violations. They've got more evidence than we've seen yet. He hasn't done it. And that's a marvelous analysis that I could only do for some time. Thank you. In place of court, John Dice for the board. I would certainly like to discuss the standard of review. But if I might start with the point that was raised by Judge Amon. With respect to an expert testifying in California, we do have a recent Supreme Court case, California Supreme Court. People be Sanchez. And counsel's right, before Sanchez was decided, the rule was different in California. Basically, an expert could come in and speak about hearsay, give background about hearsay. But the trial court was required to tell the jurors, this information is only coming in to support the expert's opinion. You may not rely on this evidence to prove the truth of the matter. And Sanchez, the California Supreme Court, and Sanchez says, well, that's very strange because the expert comes in and gets a long list of abuse that the defendant suffered. The defendant was thrown across the room, his mother abused him terribly, and on and on and on. And then the trial judge says to the jurors, this information is only used to support or clarify the expert's opinion. You cannot use this testimony to prove the truth of the matter. What a defense attorney has to do is call percipient witnesses. Under Sanchez, the percipient witnesses come in and a brother, a friend says. The aunt came to get in this case and was not allowed to testify, correct? The expert? The aunt. You say that you have to, I'm sorry, that's southern French. No, the trial court said, my limitation in the guilt phase of trial, particularly, is the expert simply can't bring in all this hearsay. The trial judge never said you can't bring in percipient witnesses. The whole rest of the. But when that witness, one of the percipient witnesses did come in. You're right. She wasn't permitted to testify in full about the abuse, correct? Correct. It was strange. The court sustained an objection that I don't think the court should have. It was one objection, and I think the question was something like, first question, did you ever see the defendant abandoned by his mother? Yes. Second question, how many times? Objection sustained, and I don't understand why that objection was sustained, but in no way did the judge say, no evidence about the defendant's childhood. It was a strange objection, but the defense attorney certainly was not prohibited from bringing in a witness to say, I saw the stepfather throw the defendant across the room. I saw the mother constantly, constantly berating this poor child. The trial court would have allowed that. There's no evidence that the trial court said you simply cannot bring in percipient witnesses to support the opinion of the expert. What in the record suggests that the trial court would have allowed that? Well, I think it's almost negative. The NLMNA hearing basically focused on the expert testimony. It's a standard principle of California law. Certainly, if you have a point to make, you can bring in a percipient witness to testify to that effect. So, if the defendant was abused, a percipient witness can testify to that effect, and then the expert can say, well, I was told in my research that the defendant suffered horrible abuse. This, that, and the other thing, and accordingly, I determined the defendant suffered from post-traumatic stress syndrome, and so on, and so on. So, it's an absolute principle that a percipient witness can describe abuse or any facts that would support an expert's opinion, but the expert can't do it, and just imagine if the rule were otherwise. The trial counsel here said, my strategy is I'm going to have Dr. Foster testify about the defendant's childhood abuse and how that affected his personality, and then I'll bring in some percipient witnesses to testify that the defendant was a peaceable person. Well, that was a poor strategy, because just imagine if Dr. Foster weren't allowed to come in and say 15 different facts. The defendant was horribly abused. The whatever it might be, the defendant told me that when he went into the apartment, he was attacked immediately by a stepfather. The jury is hearing all this so-called evidence. It's the entire defense case, and then the trial court has to step in and say, jurors, you can't accept that evidence for the truth of the matter. It's a very strange situation. It is true trial courts in California have discretion to allow an expert to rely on hearsay, but it's not a federal constitutional right to have an expert witness give all the underlying facts, which is out-of-court statements made by third parties for the truth of the matter, and if I may say, I do want to, I don't want to overdo the prejudice analysis, but one crucial point on the defense here was that mother allowed defendant's car to be repossessed. The defendant had suffered an abuse as a child, and the repossession triggered a fight or flight reaction, so it was not a self-defense or imperfect self-defense. It was not a heat passion defense. It was no premeditation, no deliberation, because the defendant was acting unconsciously, and I don't think I need to repeat all the facts in my brief. The defendant heard about the repossession at least a day before the actual killing occurred. The defendant was heard by many people saying, I'm going to kill her. I'm going to put a bullet through her head. The defendant wrote a letter. We're not looking at the viability of the defense. We're really looking about whether he was precluded from killing her. Certainly, yes, certainly, but I'm saying, Your Honor, it's harmless. You're saying there's no prejudice because it was a bad defense? I'm saying there's no prejudice. Even if there was any prejudice? Even if there was any proper restriction. Even if there was any violation? It doesn't apply to all the arguments. Exactly. I don't think, I don't think under any standard of review, even if it's Brecht, which is a strict standard, how could a jury find that the defendant was unconscious when he wrote this from San Diego to the Bay Area, when he saw people and said, did you hear what my mother did? I'm going to put a bullet through her head. He got a gun. He asked his girlfriend to take my gun for me. He got the gun. The morning of the shooting, he said to Lady Marasco, did you hear what my mother did? I'm going to go over there. Inside the apartment, he shot six shots, point blank range, largely at the heads of the victims. He walked out of the apartment. He buried the gun in the planter. He put ammunition under the planter. He burned his clothes and was an unconscious person. If I can talk about the standard of review, I do think Johnson is dispositive here. Basically, it often happens, there's no question, the defendant asserted a due process violation. But in the trial court and on appeal, what were the arguments? Certainly characterized as due process, but all the arguments focused on California Evidence Code, Section 801, Section 802, the law of expert testimony under California law. In the opening brief on appeal, look at all the cases cited. They're California authorities talking about the extent to which an expert can rely on hearsay. So, dual claims, state law error, and federal constitutional due process error, right to consent or defense. In the California Court of Appeal, start of the analysis, defendant asserts a violation of due process. But then the rest of the analysis was state law. Under Johnson, it's fairly implied, it's a rebuttable presumption, that the court was also considering due process. Johnson said sometimes state courts don't specifically refer to the federal claim in Johnson. It was almost identical. California State Evidence Code, Section 1098, the undue process in the Court of Appeal only discussed the California rule. United States Supreme Court said there are three reasons that a state court might not refer to the federal rule. But if the analysis is comprehensive, if the state court analysis addresses the relevant issues of the due process, the state court doesn't have to specifically refer to due process. I don't think I have anything else, so I'll just defer to those questions. Thank you. Could I ask about evidence to the record that the judge would have excluded the Supreme Court in this case? There absolutely is. The exclusion of, the counsel characterized the exclusion of garbage space in his testimony as there's only one of them. It was entirely consistent with the three trials that he referred to, but he didn't even think evidence of exclusion in this case would be relevant. I mean, at no stage in the case, knowing the defense, it seemed to be entirely consistent. You're starting to see evidence, and the trial judge said, I don't see that. It doesn't come to mind. I don't think this is even relevant. And then, the first time the relevance objection comes, it's out. So, there is an ample evidence in this record. I mean, the trial judge wouldn't have even thought to sit through this. But also, the point is that under Coleman, in the pre-stage of his era, the trial counsel had an absolute right to try to get these facts and to bolster the expert's opinion. And we don't have a secret insight into why counsel would often consider this tributary for another. But we do know from the state of California law that he had an absolute right to do what he did. And the trial judge had no basis under Coleman to exclude it. He didn't articulate it anywhere. How does that rise to a constitutional violation? That's the question I have. Because it is... Well, under state law, if it existed at that time, he could get this evidence in, which is hearsay. I'm going to quote... Now, you're saying that, even though the state law is to be interesting, but this rises to the level of a constitutional violation. I'm going to quote this court's decision from Scheer v. Canberra, page 10,001, Clause 3. It is clearly established federal law as determined by the Supreme Court that when a hearsay is taken, it bears prospective assertion for the first before it is excluded. Hold down a little bit. I'm sorry. It is clearly established federal law as determined by the Supreme Court that when a hearsay is taken, it bears persuasive assertion for the first before it is excluded. It is critical to the defense of the exclusion of any statement provided to the community before it is excluded. Why is he so persuasive to me? Why does it have an issue of reliability? Well, it's entirely consistent with the evidence, even the more hard evidence, that we know we have from the state. Well, he himself said that I didn't suffer abuse from my parents, correct? He said he downplayed physical abuse. He did not downplay other forms of abuse, emotional abuse, things like that. And in Dr. Foster's expert opinion, he said, this is common. You see this in our practice. People downplay abuse. Maybe the government could have been trying to impeach him for that. But that was the worst explanation for that. That's why Mr. Teepit wasn't a good vehicle, even, frankly. Also because a lot of this stuff was happening to him in his young, young form of abuse. You can't testify about how he deals with people who are 20, 40, 40 years old. I think I am a victim of abuse. Thank you. Thank you, counsel. I appreciate your argument. I appreciate your argument.
judges: Tashima, Paez, Amon